## Illinois Central Railroad Company v. Edelen.

(Decided May 27, 1913.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Carriers—Livestock—Insufficient Facilities for Loading—Liability—Instruction.—In an action for damages for injury to livestock alleged to have resulted from the failure on the part of the carrier to furnish reasonably safe facilities for loading, an instruction telling the jury that if they believe from the evidence that the plaintiff or his agent ordered and directed the defendant to place one of its cars at the freight house instead of at the company's regular place for loading the livestock, and then and there agreed with the defendant to take charge of the loading at the freight house, plaintiff thereby adopted the means at hand at the freight house for loading the stock, and the only duty which the law imposed upon the defendant was to exercise ordinary care in so placing its car at the freight house platform as to afford the plaintiff an opportunity to load the stock into the car with reasonable safety, is erroneous because imposing upon the carrier the obligation to exercise ordinary care to place the car at the freight house platform so as to afford the plaintiff an opportunity to load his stock with reasonable safety, even though the facilities for loading were such that in the exercise of ordinary care this could have been done.

2. Carriers—Livestock—Insufficient Facilities for Loading—Liability—Instruction.—Where the shipper designates the carrier's freight house as the place for loading instead of the carrier's regular place for the loading of livestock, and agrees with the carrier to take charge of the loading at the freight house, the carrier is not liable for a failure to furnish reasonably safe facilities for loading, unless the facilities for loading at the freight house were such that, in the exercise of ordinary care, the car could have been placed so as to enable the shipper to load the stock with reasonable safety, and the carrier failed to use such care, and by reason thereof the stock was injured

3. Pleading—Answer—Two Defenses in One Paragraph—Demurrer. —Where a paragraph of an answer contains two defenses, one of which is demurrable and the other not, it is error to sustain a demurrer to the paragraph as a whole.

TRABUE, DOOLAN & COX, C. L. SIVLEY and R. T. CALDWELL for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff below, Allen S. Edelen, is a breeder of saddle and show horses, which he frequently exhibited at the various fairs throughout the State of Kentucky and other states. In September, 1907, he shipped several horses to Paducah to be exhibited at the Paducah Horse Show. His horses were in charge of I. C. James. In reshipping the horses from Paducah to Louisville one of them was injured, and plaintiff brought this action against the Illinois Central Railroad Company to recover damages basing his claim on the fact that the defendant failed to furnish reasonably safe facilities for loading. From a verdict and judgment in favor of the plaintiff in the sum of $1,400 the railroad company appeals.

The railroad company maintains in Paducah a freight depot, about 450 feet long and 70 feet wide. There is a platform on either side and at one end. The car in which plaintiff's stock was being loaded was stationed near the west end, while the approach to the platform was on the east; and to reach the car the horses had to walk down the platform the full length of the depot, and then across the end of the depot, a distance of 70 feet, making a total distance of about 518 feet. It was near midnight when the loading of plaintiff's horses was undertaken. There were no banisters along the platform, which is only about four feet wide, and although freight cars usually stood on the track parallel to the platform, yet for some distance from the east end of the platform there were no cars there on the occasion in question.

According to the evidence of plaintiff there were overhead lights along the platform, and while the mare in question was being led along the platform she became frightened and fell off and was badly injured. Mr. James, who had charge of plaintiff's horses, engaged a car and paid the freight on the afternoon of the day the horses were shipped. He advised defendant's agents that the horses would not be loaded until after they had been exhibited that evening. Plaintiff's agents say that they objected to the stock being loaded at the freight depot, but were told by a representative of the railroad company that they would have to load at that place. The mare that was injured was three-years old and standard bred. She was shown many times and was never defeated in the show ring. Several witnesses testified that she was reasonably worth on the market when uninjured the sum of $2,500.

According to the evidence for defendant Mr. James himself requested that the car be placed at the freight depot. The agent told him that they had no facilities for loading horses at the freight house, and there was nobody there after six o'clock who could help him. Mr. James said that he wanted to load the horses at the freight depot for the reason that he did not want to load the horses until after the close of the horse show that night. The agent told him that they would rather place the car at the stock yards, where all live stock was loaded. Mr. James said "well, I unloaded my horses at the freight house, and I would like to load them out from there." On that account the agent arranged to have the car put at the freight house. The car was placed and Mr. James examined it and said it was all right. Mr. James asked for the bill-of-lading, but he told Mr. James he could not deliver the bill-of-lading until the stock was received by the company. Another agent testified that Mr. James told him that he had arranged to have the car placed at the freight platform. Stock being shipped out of Paducah were usually loaded in the stock chutes.

It is first insisted that the trial court erred in giving instruction No. 1, which is as follows:

"If you believe from the evidence that the plaintiff or his agents, ordered and directed the defendant to place one of its cars at the freight house instead of at the company's regular place for the loading of live stock, and then and there agreed with the defendant to take charge of the loading at the freight house, the plaintiff thereby adopted the means at hand at the freight house for loading the stock mentioned in the petition from the ground into the car and the only duty which the law imposed upon the defendant was to exercise ordinary care in so placing its car at the freight house platform as to afford the plaintiff an opportunity to load his stock into the car with reasonable safety; and if you shall believe from the evidence that there was an agreement of this kind between the plaintiff and the defendant, and that the defendant exercised ordinary care in so placing its car at the freight house door as to afford the plaintiff an opportunity to load his stock with reasonable safety, then the law is for the defendant and the jury should so find."

It is also urged that the court erred in refusing the following instruction offered by the defendant:

"e. The court instructs the jury that if they believe from the evidence that the defendant at the time of the accident maintained or furnished suitable and convenient stock pens or chutes for loading and unloading live stock, and that plaintiff or his agent requested that the car in which the horses were to be shipped should be placed at the freight house instead of at stock pens or chutes, the law of this case is for the defendant and the jury should so find."

It will be observed that the instruction offered by the defendant absolved it from all liability if plaintiff designated the freight house as the place for loading, even though the facilities for loading at the freight house were such that the defendant, in the exercise of ordinary care, could have placed the car so as to enable plaintiff to load the stock with reasonable safety. On the other hand, the instruction given by the court in the event that plaintiff designated the freight house as the place of loading, imposed on defendant the duty of exercising ordinary care to place the car at the freight house so as to afford plaintiff an opportunity to load his stock with reasonable safety, even though the facilities for loading there were not such as to enable plaintiff to load the stock with reasonable safety. In our opinion neither instruction is correct. If plaintiff did designate the freight house as the place for loading, and agree to take charge of the loading there, this fact did not authorize the defendant to place the car where the stock could not have been loaded with reasonable safety, if, as a matter of fact, there were other places in the freight house where, in the exercise of ordinary care, the car could have been placed so that the stock could be loaded with reasonable safety. On the other hand, if there were no other places in the freight house where, in the exercise of ordinary care, the car could have been placed so as to enable the stock to be loaded with reasonable safety, then defendant was not liable.

On another trial the court, in lieu of instruction No. 1, will give the following instruction:

"If you believe from the evidence that the plaintiff or his agent directed defendant to place one of its cars at the freight house instead of at the company's regular place for the loading of live stock, and then and there agreed with the defendant to take charge of the loading at the freight house, the plaintiff thereby adopted the facilities at the freight house for loading the stock in

question, and you will find for the defendant, unless you believe that the facilities for loading at the freight house were such that, in the exercise of ordinary care, the car could have been placed so as to enable plaintiff to load the stock with reasonable safety, and the defendant, in placing the car, failed to use such care, and by reason thereof the mare in question was injured, in which event you will find for the plaintiff.

Paragraph 2 of defendant's answer is as follows:

"That the contract of shipment mentioned in plaintiff's petition and the contract of shipment that was entered into between I. C. James and this defendant in writing on the 27th day of September, 1907, at Paducah, Ky., wherein this defendant received from the said I. C. James one carload of horses to be transported by it from Paducah, Ky., to Louisville, Ky., consigned to Allen S. Edelen, contained, among other things, the following stipulation:

"The cars containing the stock are to be in charge of the shipper or his agents while in transmit, and the shipper assumes the duty of loading and unloading the said stock.

"That at the time that said mare is alleged to have been injured she was in the sole charge, custody and control of the said I. C. James and not in any manner whatsoever in the hands of or under the control of this defendant. That the injuries of said mare, if any, there were caused by the negligence and carelessness of the plaintiff or of his agents in charge of the horses at the time mentioned in plaintiff's petition and that said negligence and carelessness upon the part of the plaintiff or of his agents contributed to causing or did cause the injuries, if any, complained of and but for which the said injury would not have occurred.

"Wherefore, having fully answered this, defendant prays to be hence dismissed with its costs herein incurred."

A demurrer was sustained to the foregoing paragraph, and it is contended that this ruling was error. It will be observed that the paragraph sets up two defenses; (1) The agreement of the shipper to take charge of the loading and unloading of the stock; and (2) the plea of contributory negligence. The demurrer was filed to the whole paragraph. Plaintiff could have required the two defenses to be paragraphed and then demurred to each, or he could have filed partial demurrers to each part of

·the paragraph: In that event it would have been proper to sustain the demurrer to any part of the paragraph that did not state a ground of defense. As it was, the demurrer went to the whole paragraph, and as the defense of contributory negligence was properly pleaded, the demurrer should have been overruled. Newman on Pleading and Practice, 2nd Ed., Sec. 565; Williams v. Langford, 15 B. Mon., 566; Archer v. National Insurance Co., 2 Bush, 226; Sun Mut. Ins. Co. v. Christ, 19 Ky. L. Rep., 305.

It is insisted, however, that the evidence fails to show any contributory negligence on the part of the plaintiff, and that the error of the trial court in sustaining the demurrer was not prejudicial. The propriety of the trial court's action does not depend on what evidence was actually introduced, but on what evidence the defendant might have introduced had the demurrer not been sustained. We cannot assume that no evidence of contributory negligence would have been introduced merely because none was introduced after the plea of contributory negligence was eliminated from the case. Manifestly the error complained of was prejudicial.

Judgment reversed and cause remanded for proceedings consistent with this opinion.